## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

WILTON DOLISCAR            CASE NO.:_____
    Plaintiff,

v.

BANK OF AMERCIA N.A., STEVE
MANIKUM and J.P.MORGAN CHASE
BANK N.A.
___Defendants_____/

## COMPLAINT FOR DAMAGES

Plaintiff, WILTON DOLISCAR, by and through the undersigned counsel hereby sues Defendants, BANK OF AMERCIA N.A., (hereinafter "BOA"), STEVE MANIKUM (hereinafter "MANIKUM") and J.P. MORGAN CHASE BANK N.A. (hereinafter "CHASE") and states as follows:

1.      This Complaint seeks damages and recovery of funds which were taken without authorization from WILTON DOLISCAR by cashing a stolen cashier's check issued by BANK OF AMERCIA N.A. and J.P. MORGAN/CHASE BANK N.A. who cashed the cashier's check after being told that the check was forged and stolen. The cashier's check was at all times solely made out to for the benefit of WILTON DOLISCAR and was significantly his life savings.

### JURISDICTION

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the matter arises under a federal question and there is diversity between the parties, this Court has jurisdiction. In addition, the Court has pendant jurisdiction over the state law cause of action pleaded herein pursuant to 28 U.S.C. § 1367(a). The amount in controversy is more than $75,000.

3.      Venue is appropriate in the Southern District of Florida pursuant to 28 U.S.C. §1391(b)(2) and (3).

### THE PARTIES

4.    WILTON DOLISCAR is and was, at all relevant times, a citizen of the State of Florida.

5.      BANK OF AMERICA, N.A. is, upon information and belief, a bank organized under the laws of the United States, headquartered in Charlotte, North Carolina, with offices in the Southern District of Florida.

6.      STEVE MANIKUM, is, upon information and belief, a Vice President of BANK OF AMERCIA N.A.'s North Miami, Florida branch located in North Miami, Florida, who acted as a representative for the bank in the communications held with the Plaintiff.  MANIKUM works at the BANK OF AMERCA, N.A., North Miami Branch located at 990 NE 125th Street, North Miami, Florida 33161.

7.      J.P. MORGAN/CHASE BANK N.A. is, upon information and belief, a bank organized under the laws of the United States, with offices in the Southern District of Florida whose main office is headquartered in New, New York.

## GENERAL ALLEGATIONS

8.      On about the year 2010, WILTON DOLISCAR opened an account numbered ending in 0213 (redacted) at the BANK OF AMERCA, N.A., North Miami Branch located at 990 NE 125th Street, North Miami, FL 33161.

9.      The account was opened as personal checking account.

10.     WILTON DOLISCAR's Account was established primarily for person, family, and household purposes.  As such, he used it to pay personal expenses such as his home mortgage, school tuition bills for his children and other household expenses.

11.     WILTON DOLISCAR is originally from HAITI and immigrated to the United States on or about May 7, of 2007.  WILTON DOLISCAR works as a warehouse worker for a chicken slaughterhouse and works long hours.

12.     WILTON DOLISCAR received $74,601.00 from family and friends over the course of several months for the purchase of a home.

13.     WILTON DOLISCAR was expected to repay these funds in reasonable time.

14.     WILTON DOLISCAR is very well respected and held in high regard amongst family and friends.

15.     RACHEL ETIENNE is WILTON DOLISCAR'S sister and emigrated from Haiti to the United States on or about May 2, 1979.

16.     The Plaintiff was a BANK OF AMERICA, N.A. client and at all times relevant, BANK OF AMERCIA, N.A. had a duty of care and a fiduciary duty to the maintain Plaintiff's account secure.

17.     On or about January 5, 2011, Plaintiff purchased a cashier's check from BANK OF AMERCIA, N.A., in Miami in order to buy a home.  The check was made out to Plaintiff's name in order to pay off a closing at some late date.

18.     The cashier's check was in the amount of $74,601.00.

19.     The cashier's check was hidden in RACHEL ETIENNE's purse for safe keeping.

20.     On or about January 17, 2011, RACHEL ETIENNE went momentarily into a Check Cashing store.

21.     The Check Cashing store is located at 15028 N.E. 6 Avenue, Miami, Florida 33161.

22.     Upon exiting the Check Cashing store, Etienne and a friend get into her car, when they were approached by a man with a gun. The gunman asked for the purse containing the cashier's check. The gunman said "I want the purse that in the back seat".

23.     Etienne, in fear for their lives, gave the thief the purse.

24.     Etienne immediately called the City of Miami Police Department.  The officer issued a police report. (See attached Exhibit "A").

25.     That following morning, on or about January 18, 2011 at approximately 9:00 A.M., DOLISCAR and Etienne went to BOA at the North Miami Branch located at 990 N.E. 125th Street, North Miami, Florida 33161 to report the cashier's check stolen.

26.     At the BANK OF AMERICA, N.A. Branch, they were met by MANIKUM, Vice President and Banking Center Manager for BANK OF AMERICA, N.A. and KATTIE WEST, Personal Banker for BANK OF AMERICA, N.A. and were given their business cards (Exhibit "B") business card for MANIKUM, Vice President and (Exhibit "C") business card for KATTIE WEST, Personal Banker).

27.     Defendant MANIKUM stated that there was little to be done for 30 days and that he would be in touch with the Plaintiff about recovering his funds.

28.     At the BOA location, the Plaintiff and his sister were told that they need not worry, that the funds would *not* be lost and that they needed to post a bond.  At no time did MANIKUM explain that there was a cost for the bond.

29.     Plaintiff, now totally financially devastated and with no funds at all and well after thirty (30) days had passed, was informed by BOA representative MANIKUM that Plaintiff must pay a bond of $3,700.00.

30.     Plaintiff immediately informed MANIKUM that Plaintiff did not have $3,700.00 and that Plaintiff had just lost significantly all of his savings.

31.     Defendant MANIKUM never explained to Plaintiff how and why the bond would cost $3,700.

32.     In reliance upon MANIKUM'S professional advice, WILTON DOLISCAR cooperated in every way to stop the theft of his funds and filled out all of the paperwork requested by MANIKUM and BOA.

33.     The Plaintiff and his sister were now devastated at the possibility of losing the opportunity to purchase their home.

34.     Rachel Etienne and plaintiff inquired with friends about where a bond could be secured and learned from a bonds man on or about January 18, 2011 that such a bond would cost around $3,700.  (See Affidavit of Rachel Etienne attached as Exhibit "D").

35.     The same day Rachel Etienne went to BOA and told MANIKUM that Plaintiff did not have $3,700 and asked to have the funds deducted from the recovered check proceeds, MANIKUM said he could not.  MANIKUM instead said to return to BOA in thirty (30) days.

36.     Plaintiff and his sister, Rachel Etienne ("Etienne"), returned to the BOA North Miami location and met with MANIKUM on or about February 18, 2014.

37.     MANIKUM informed Plaintiff and Etienne that the stolen cashier's check was forged and cashed at a CHASE BANK branch.  The Plaintiff was told how the check was cashed and the name of the account holder at CHASE BANK who cashed the check.

38.     The Plaintiff learned that the thief had deposited the check in an account at CHASE BANK on an unspecified date and was subsequently cashed on or about February 1, 2011.

39.     MANIKUM asked that the Plaintiff to allow him an additional ninety (90) days for him to investigate how the stolen forged cashier's check was cashed despite the fact that BOA had actual knowledge before February 1, 2011 that the cashier's check was stolen.

40.     Even though MANIKUM had more than thirty (30) days to report the cashier's check stolen, nothing was in fact done by MANIKUM or BOA to stop the cashing of the stolen check.

41.     MANIKUM did not explain how such a thing had happened and the Plaintiff was at a loss for words how MANIKUM and BOA allowed such a thing to occur.

42.     On or about July 2, 2013, Etienne and went to CHASE to speak directly with a CHASE representative regarding the cashing of the stolen check.

43.     Etienne was informed by the CHASE representative that CHASE had been trying to get a hold of BOA for over thirty (30) days to verify the funds and the signature on the check.

44.     CHASE also stated that BOA had failed to respond to any of its attempts regarding the check.

45.     Allegedly, BOA never informed CHASE, during the thirty (30) day period that CHASE attempted to verify funds, that the certified check was stolen.

46.     BOA never informed CHASE that the certified check's signature did not match WILTON DOLISCAR'S on-file signature and that the check was forged.  Which at that point, CHASE should have dishonored the cashier's check and/or withheld the cashier's check for involvement.

47.     Plaintiff DOLISCAR and his sister Etienne also reported the stolen cashier's check to the Delray Beach Police Department on or about January 27, 2011.  According to the Delray Beach Police Department Police report, the cashier's check was processed on February 1, 2011 allegedly at a CHASE branch located at 1010 South Federal Highway, Delray Beach Florida, 33483, Branch # 741660 (See Delray Beach Police report attached as Exhibit "E").

48.     The Police Officer, Master Police Officer Jeffrey A. Miller, ID #400 of the Delray Beach Police called CHASE Bank.

49.     The branch manager of CHASE told the officer that if the check were cashed, proper identification would have been required.

50.     The Plaintiff has yet to receive the identity of the thief so that charges could be brought against him/her for fraud.

51.     Upon investigation of the cashed cashier's check by the Plaintiff, the signature did not match the signature of the Plaintiff.

52.     Defendant CHASE knew that the check was fraudulent but failed to act.  In fact the Plaintiff spoke directly to the CHASE representative/President to present a copy of the police report marked as Exhibit "E" in her statement.

53.     The Plaintiff promptly notified BOA and CHASE of the forged check and the forgers attempt to steal the all of his funds.

54.     The Plaintiff filled out a "Fraud Statement of Claimant-Instruction" form on or about October 21, 2013.  (See attached Exhibit "F").

55.     This statement should have been completed the first day the Plaintiff reported the cashier's check stolen, not several years after the fact.

56.     The Plaintiff was then told to return in thirty (30) days, then ninety (90) days, then six (6) months.  Finally, after six (6) months, Plaintiff was told that not only was the check lost, but that the check was cashed at CHASE fifteen (15) days **_after_** it was reported stolen by the Plaintiff and that the Plaintiff should go ask Defendant CHASE for the money.  The Plaintiff was told then that BOA would not refund him any funds at all.

57.     MANIKUM knew that filling out a standard bank fraud form was the industry standard but failed to have the Plaintiff complete the form.  The acts of BOA and MANIKUM were in reckless and willful and disregarded the Plaintiff's rights.

58.     The reason that the Plaintiff's purchased the cashier's check was because of the added security feature of a certified check and so that no other parties other than those that were

named on the check could cash the Plaintiff's check. The Plaintiff was secure in the security afforded him by the BOA cashier's check, which he paid for and received no security at all.

59.      The Plaintiff believed that his funds were safe from fraud, theft and forgery.

60.      The Plaintiff is has an account and a contract with the Defendant BANK OF AMERICA N.A.

61.      Pursuant to the Agreement, WILTON DOLISCAR appointed BANK OF AMERICA N.A. the right to debit and credit his account, maintain his funds safe, and to provide money transfer services and cashier's checks that were to be cashed only upon the signature and endorsement of the Plaintiff.  The Plaintiff did not sign and endorse the Cashier's Check.  BOA breached the agreement.

62.      The actions taken by BOA and CHASE were outrageous and outside the scope of BOA and CHASES'S authority and contrary to standard banking practices.  BOA modified the agreement by the parties through such course of performance.

63.      The Agreement expressly provides that the funds of the Plaintiff and his property must be safeguarded by the bank.

64.      BOA never contacted WILTON DOLISCAR to verify his approval and authorization to effectuate the cashing of the cashier's check nearly 15 days after it was stolen and forged. BOA knew that WILTON DOLISCAR did not want the stolen and forged check cashed under any circumstances.  The entire balance of the stolen check was significantly WILTON DOLISCAR'S life savings.

65.      Through information and belief, the Plaintiff must allege that when the signatures on the checks do match the client's signature, a bank is responsible for the theft of the client's funds. In the instant case, clearly the signature did not match.

66.    The Defendant CHASE claimed that they attempted to contact BANK OF AMERCIA, N.A. for over 30 days and BANK OF AMERCIA, N.A. failed to respond to any verification of the check, however CHASE also had actual knowledge that the check was indeed stolen and forged.

67.    WILTON DOLISCAR never authorized CHASE and their client to cash the stolen and forged cashier's check for there own use.

68.    Indeed, WILTON DOLISCAR does not know, and have never met their client, the unknown account holder who cashed the stolen funds, and is at a loss to understand how these transactions were ever allowed to occur.

69.    BOA was in position to stop the theft of the Plaintiff's funds.

70.    CHASE was in a position to stop the theft of the Plaintiff's funds.

71.    BOA and CHASE have failed to return the Plaintiff's funds and repay any interest to WILTON DOLISCAR for the unauthorized use and theft of his funds in violation with the agreement he has with BOA.

72.    Each Defendant has instead blamed the other.

73.    BOA is responsible for the acts of their employee and agent MANIKUM.

74.    WILTON DOLISCAR directly and through his counsel has repeatedly demanded the return of all the funds.

75.    BOA has refused to return all the funds.

76.    CHASE has refused to return all the funds.

77.    A reasonable person would not expect that their trusted banker, in this case BOA, would in effect allow a perpetrator to illegally to cash a stolen cashier's check and take his life savings.

78.     A reasonable person would not expect that a bank, in this instance CHASE, would allow a perpetrator to cash a cashier's check known to be stolen and forged, in order to convert those funds for their own use.

79.     The Defendants BOA, MANIKUM and CHASE knew that failure to act and to protect the Plaintiff's funds would have a devastating effect and failed to do everything in their power to stop the fraud.

80.     The Defendants BOA and MANIKUM were entrusted with the Plaintiff's funds and failed to engage in reasonable conduct to protect those funds.

81.     The Defendants BOA and MANIKUM failed miserably in their fiduciary duty to protect Plaintiff's funds and more than likely encouraged the fraud instead of preventing it.

82.     Defendant BOA failed to properly supervise and train Defendant MANIKUM.

83.     Defendants have not acted in good faith.

84.     *Price v. Neal* 3 Burr. 1354 (King's Bench, 1762) states that a bank is responsible for recognizing its own depositor's signature. Once the midnight deadline passes, the bank becomes accountable for the amount of the forged check.

85.     All Defendants failed miserably to prevent a total loss of the Plaintiff's account wiped out by a thief.

86.     Through information and belief, the Plaintiff must aver that BOA'S liability for a forged check arises because it maintains the Plaintiff's signature in its records and was therefore in the best position to verify the signature's accuracy and prevent the fraud.

87.     Through information and belief, the Plaintiff must therefore allege that under Florida's Under the Uniform Commercial Code (UCC), a bank may only cash checks that are "properly payable".  A forged check is not properly payable. This creates a liability for a bank if it cashes

a forged check. The Plaintiff had a reasonable expectation that his funds were secured by virtue of purchasing a cashier's check from his trusted banker, BOA.

88.     The Defendant BOA failed to exercise due care in making sure that the customer's signature matched the signature on the cashier's check.

89.     The Plaintiff did not sign the check and any signature on the check is not the signature of the Plaintiff.

90.     The forgery is not the signature of the Plaintiff.

91.     The Plaintiff denies that the signature on the cashier's check is his.

92.     The forged signature on the cashier's check is not binding on the Plaintiff.

93.     The forged check did not give the Defendants the right to convert the Plaintiff's funds to cash.

94.     Defendants BOA and CHASE had actual evidence and knowledge that the cashier's check had been obtained by theft and fraud and the Plaintiff is at a loss for words of why they allowed this check to be cashed and credited to the thief's account.

95.     If the Defendants are allowed to unlawfully keep the Plaintiff's funds through theft, forgery and negligence, the cashier's check in Florida will be deprived, in the hands of fictitious and the essential characteristic which makes cashier's checks useful and their safety will be of no value and be lost.  This result will subvert the policy of negotiability underlying Article 3 and 4 of the Uniform Commercial Code and vitiate the basic purpose of the safety and security of funds via cashier's check. The Defendant's were all paid for their services, even though they acted unlawfully and in negligence, and should not be unjustly enriched.

96.      Defendants have all attempted to shift their loss on the Plaintiff.

97.    The drawee bank was given ample time to stop a payment on a check that was known to have been stolen and forged.

98.    Even if the check were not forged, the fact that it was stolen alone was enough for the banks to stop the processing of the check.

99.    The acts of the Defendants was unlawful and in blatant disregard of the law.

100.    The acts were done with reckless disregard of the rights of the Plaintiff resulting in severe emotional distress, depression, confusion, aggravation, loss of the opportunity to buy a home and a total loss of her savings.

101.    The Defendant BOA was required to refund the Plaintiff for the loss of her funds and failed to do so.

102.    The Defendant CHASE, the drawee was required to stop payment on the stolen check with the forged signature and aided the forger in making a windfall profit at the Plaintiff's expense.  The drawee was negligent and is liable to the Plaintiff.

103.    Both Banks failed to observe ordinary care or good faith and fair dealings.

104.    The acts of both banks were unreasonable.

105.    Therefore, when a check bearing a forged endorsement is paid, the drawee bank must credit the drawer's account for the item. It further observed the UCC exception to this rule that states if a drawer is negligent in issuing a check and that negligence substantially contributes to the forgery, then the drawee bank can refuse to credit the drawer's account for the forged item.

106.    The forger's signature does not match the Plaintiff's signature.

107.    The Defendants should have flagged or otherwise made a notation that the check was stolen/created by forged signature and was not negotiable. In stead the check was negotiated with a forged signature against the Plaintiff's wishes.

108.    The actions of the Defendants were unreasonable and done with reckless disregard for the rights of the Plaintiff.

109.    The CHASE and BOA had a legal basis for refusing payment. If paying the check would contravene state law, the bank can also refuse payment. Bank employees who do not believe that the person presenting a check has a right to cash it can refuse payment until that person provides a valid form of identification to establish her identity and properly presents themselves a holder in due course.

110.    Under the Uniform Commercial Code (UCC) Section 3-312, when the check was presented for payment, it could have been marked "[not] properly payable due to enforceable claim made under UCC 3-312."

111.    CHASE failed to use reasonable care and instead allowed the forger to complete their crime and cash the Plaintiff's stolen cashier's check.

112.    WILTON DOLISCAR did not authorize an ACH debits, credits or electronic checks from the Account for the benefit of John M. Holub, JP Morgan CHASE Bank, CHASE Home Finance LLC or anyone else.

113.    Due to the acts of all the Defendants, the Plaintiff lost significantly his entire life savings.

114.    The acts of the Defendants were willful, in reckless disregard for Plaintiff's rights, malicious, and wanton.

115.    The Defendants refused to refund the Plaintiff's funds.

116.    BOA had not legal right to otherwise accept or cash the cashier's check that was known in advance to be stolen and forged.  The willful and wanton acts of BOA caused damages to their client, DOLISCAR.

117.   BOA had no legal right to accept, or cash the cashier's check that was known in advance to be stolen, forged and with a signature that did not match the Plaintiff's signature. The willful and wanton acts of BOA caused damages to their client, DOLISCAR.

118.   CHASE had no legal right to process a stolen cashier's check, which was known in advance to be stolen, forged and with a signature that did not match the Plaintiff's signature. The willful and wanton acts of CHASE BANK N.A. caused damages to WILTON DOLISCAR.

119.   The unauthorized use of the Plaintiff's cashier's check confirms that BOA and CHASE security controls was lax.

120.   Defendants BOA, N.A., MANIKUM and CHASE BANK N.A. failed to prevent a fraud upon the Plaintiff.

121.   The theft of the Plaintiff's funds was easily preventable.

122.   The Defendant BOA, MANIKUM and CHASE BANK N.A. had prior knowledge that the account had been compromised and failed to exercise due care in prevented a total loss of Plaintiff's account.

123.   A reasonable juror would conclude that the acts of the Defendant BOA, MANIKUM and CHASE BANK N.A. were unreasonable and acted in negligence.

124.   The Defendant BANK OF AMERICA, N.A., MANIKUM and CHASE BANK N.A. failed to perform in their duties and acted contrary to their corporate policies to prevent theft.

125.   Defendants BOA, MANIKUM and CHASE BANK N.A. failed to act in good faith and with due care. *See* Fla. Stat. §674.103.

126.   CHASE and the thief were not holders in due course.

127. A reasonable person would not have purchased a cashier's check with BOA if they had been aware that their funds were at risk and that BOA had such lax security protocols and controls.

128. Defendant BOA failed to verify the Plaintiff's Identification, failed to verify Plaintiff's signature and failed to verify the authenticity of the cashier's check with BOA.

129. Defendant CHASE failed to verify the Plaintiff's Identification, failed to verify Plaintiff's signature and failed to verify the authenticity of the cashier's check with BOA.

130. Having actual knowledge of fraud being perpetrated upon a customer, the Defendants BOA, MANIKUM and CHASE BANK N.A. entered into a transaction with the perpetrator that deposited the Plaintiff's forged, stolen cashier's check and the Defendants aided said person(s) in furtherance of the fraud.

131. Under the circumstances, presentment of the stolen cashier's check should have been rejected and reported to the Plaintiff and law enforcement.

## COUNT I
## BREACH OF CONTRACT AS TO BANK OF AMERICA

132. The Plaintiff hereby incorporates and re-alleges all the allegations in paragraphs 1 through 131of this Complaint as if stated fully herein.

133. BOA breached the Agreement by failing to safeguard the Plaintiff's funds and breaching clearly established state and federal law in cashing a stolen and forged cashier's check with signatures that do not match the account holder's signature.

134. BOA breached the agreement by failing to reimburse the Plaintiff for a loss of any funds for their negligence in cashing the stolen and forged cashier's check.

135. In addition, by failing to keep established industry standards regarding stolen and forged checks and failing to respond to CHASE'S request to verify the cashier's check and the

signature, the unauthorized holder of the check was allowed to complete the theft  of the Plaintiff's funds.

136.    BOA beached the Agreement by failing to follow the customs and practices between the parties establishing that no stolen or forged checks can be cashed and that unauthorized signatures can not be used to convert a cashier's check to cash.

137.    BOA further breached the Agreement by failing to inform CHASE that the Plaintiff's cashier's check was stolen, that the signature was forged, and that the signatures did not match and the cashier's check could not be cashed, thereby securing the Plaintiff's funds.

138.    As a result of BOA's breaches, WILTON DOLISCAR suffered damages.

WHEREFORE, WILTON DOLISCAR demands the entry of judgment in his favor and against BOA in an amount of at least $74,601.00, plus interest, costs, fees incurred and any other relief that the Court may deem just and appropriate.

## COUNT II
## NEGLIGENCE AGAINST ALL DEFENDANTS

139.    The Plaintiff hereby incorporates and re-alleges all the allegations in paragraphs 1 through 138 of this Complaint as if stated fully herein.

140.    BOA, and CHASE negligently allowed the thief to steal all of the Plaintiff's funds.

141.    The Defendant BOA and MANIKUM, in breach of its duty to Plaintiff, failed to maintain proper procedures to maintain the safety of the Plaintiff's funds. Despite the fact that the Defendant BOA and MANIKUM were forewarned that the check had been stolen, forged and the signature would not match the Plaintiff's confirmed by a police report.

142.    CHASE knew before they attempted to cash the Plaintiff's cashier's check, despite having knowledge before hand that the check was forged, stolen and did not bear the signature of the Plaintiff.

143.    All Defendants were negligent and allowed a cashier's check bearing a forged signature that did not bear the Plaintiff's signature to be cashed.  .

144.    Plaintiff was not timely instructed to sign fraud affidavit by BOA, which was regular procedure.

       **WHEREFORE**, Plaintiff WILTON DOLISCAR, respectfully prays that this Honorable Court, declare that the acts of the Defendant BOA, MANIKUM and CHASE were negligent and unreasonable and award the Plaintiff actual and punitive damages for the Defendants actions which resulted in damages to the Plaintiff; award Plaintiffs actual damages for Grace's negligence; award Plaintiffs attorneys' fees and costs; such other and further relief that the Court deems appropriate.

**COUNT III**
**BREACH OF IMPLIED CONTRACT AS TO BANK OF AMERCIA, N.A.**

145.    The Plaintiff hereby incorporates and re-alleges all the allegations in paragraphs 1 through 144 of this Complaint as if stated fully herein.

146.    Pursuant to common law principle, a bank has an implied contractual obligation to safeguard all funds entrusted by customers such as Plaintiff.

147.    BOA breached its implied contractual obligation by improperly allowing a perpetrator and purported thief to take the Plaintiff's funds via cashing of a stolen and forged cashier's check.

148.    Moreover, BOA breached its implied covenant of good faith and fair dealing by failing to refund the Plaintiff in full after BOA learned about their failure to stop the thief from cashing the Plaintiff's cashier's check.

149.    Instead BOA failed to respond to CHASE'S request for verification of the cashier's check and despite having actual knowledge that the cashier's check was stolen and forged

(confirmed by a Police report), the Defendant chose to allow CHASE to verify the cashier's check authenticity and for the forger to convert the funds to his own use.

150.    The Plaintiff suffered damages and as a result of the aforementioned breaches, the Plaintiff was damaged.

151.    The acts of BOA were unreasonable and actually aided the thief in stealing all of the Plaintiff's savings.

152.    The account contained substantially all of the Plaintiff's life savings.

WHEREFORE, Plaintiff demands the entry of judgment in his favor and against BOA in an amount of at least $74,610.00 plus interest, actual damages, compensatory damages, costs, fees incurred and any other relief that the Court may deem just and appropriate.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY AS TO BANK OF AMERICA**

153.    The Plaintiff hereby incorporates and re-alleges all the allegations in paragraphs 1 through 152 of this Complaint as if stated fully herein.

154.    Plaintiff, upon information an belief, alleges that, based on their legal duty by virtue of their contract for services from Defendant (BOA) and STEVE MANIKUM, their was special relationship of trust and confidence imposed upon them by law, BOA and MANIKUM, and each of them, owed the Plaintiff a legal duty of undivided service and loyalty, which duty is fiduciary in nature and imposed upon the aforementioned Defendants.

155.    This relationship was held to the highest standard of good faith, including a duty of disclosure, to protect the Plaintiff's funds and to observe reasonable care and the law in the crediting and debiting of the Plaintiff's account.

156.   At all times the Defendants should have used reasonable care in yielding to the Plaintiff's instructions in order to conserve his money, to avoid losses due to fraud and properly verify the Plaintiff's signature to verify that the cashier's check was endorsed by a proper party.

157.   BOA and MANIKUM, and each of them breached their respective fiduciary duties to Plaintiff by engaging in the acts previously alleged herein.

158.   The Defendants actions were done deliberately despite the fact that they had been warned that there would be an attempt to forge the Plaintiff's signature, the cashier's check was stolen and that a thief would attempt to steal funds from the Plaintiff.

159.   Despite the warnings as more fully stated above, the Defendants BOA and MANIKUM did nothing to stop the fraud.

160.   As a direct and proximate result of the actions of BOA and MANIKUM and their breach of fiduciary as aforesaid, Plaintiff has been damaged.

161.   The actions of BOA and MANIKUM), actions were an intentional misconduct such that Plaintiff is entitled to punitive damages in an amount to be determined by the trier of fact.

WHEREFORE, Plaintiff prays for entry of a judgment in its favor and against Defendants BANK OF AMERCIA, N.A. and MANIKUM, jointly and severally, and award Plaintiff the actual damages it has suffered, pre-judgment and post-judgment interest, and the reasonable costs ad attorneys ' fees associated with this action, together with such other and further relief deemed just and appropriate.

## COUNT V
## CONVERSION AS TO J.P. MORGAN/CHASE BANK N.A.

162.   The Plaintiff hereby incorporates and re-alleges all the allegations in paragraphs 1 through 161 of this Complaint as if stated fully herein.

163.    At the time of the debiting of the Plaintiff's account, which was wrongfully induced by Defendants as described above, Plaintiff gave Defendant J.P. MORGAN/CHASE BANK N.A. a copy of the Police report, explained that the Plaintiff was a victim of identity theft and fraud and explained that the check was forged, did not match Plaintiff's signature and was not be debited from the Plaintiff's account.  Despite this actual knowledge, the Defendant caused the Plaintiff's account to be debited in the amount of over $74,601.00 anyway.

164.    By ignoring the Plaintiff's warning that his account was compromised by one of CHASE'S customers, that the cashiers check was forged and did not match the Plaintiff's signature, that the check was not in possession by a party with the lawful authotiry to cash the check (no holder in due course) and failing to otherwise call the Police or the FBI and instead calling Defendant BOA to verify the authentic of the cashier's check, (even after presentment of a police report), CHASE was in every way complicit in the conversion of the Plaintiff's funds for CHASE and the benefit of CHASE's client.

165.    By the Defendant CHASE's actions, they aided and abetted the forger in their crime, converted the funds for their use and issued funds to the thief.

166.    Upon learning of the defects and non-conformities of the check and the actual fraud, and Defendants' refusal and/or inability to cure same within a reasonable time as described herein, Plaintiff notified Defendants of his intent to take legal action.

167.    Despite Plaintiff's demands, Defendants have failed and/or refused to cancel the void transaction and refund Plaintiff's money, converting same to their own use.

168.    Plaintiff is entitled to recover his actual damages, plus costs and reasonable attorney fees, in addition to any other right or remedy at law or otherwise.

***WHEREFORE***, Plaintiff prays for judgment against Defendant J.P. MORGAN/CHASE BANK N.A. in whatever amount above $74,610.00 Plaintiff is found to be entitled, plus treble damages, interest, court costs and reasonable attorney fees.

## COUNT V
## (VIOLATION OF FLORIDA UCC § 673-674) AS TO BANK OF AMERICA, N.A. AND J.P. MORGAN/CHASE BANK N.A.

169.   The Plaintiff hereby incorporates and re-alleges all the allegations in paragraphs 1 through 168 of this Complaint as if stated fully herein.

170.   To the extent that the unauthorized negotiation of a stolen, forged check, not in possession of a party with lawful authority to cash same, and not in possession of a holder in due course, violated Florida Statute §673.3121 by failing to return stolen funds and cashing a check, upon presentment known to be forged, stolen and bearing a signature that does not match the owner of the check.

171.   The Cashier' check was not properly paid to a party legally entitled to cash it pursuant to Fl. Stat. §673.3121 which states as follow:

> 673.3121   Lost, destroyed, or stolen cashier's check, teller's check, or certified check.—
> (1)   In this section, the term:
> **(a)   "Check" means a cashier's check, teller's check, or certified check.**
> **(b)   "Claimant" means a person who claims the right to receive the amount of a cashier's check, teller's check, or certified check that was lost, destroyed, or stolen.**
> (c)   "Declaration of loss" means a written statement, made under penalty of perjury, to the effect that:
> 1.   The declarer lost possession of a check;
> 2.   The declarer is the drawer or payee of the check, in the case of a certified check, or the remitter or payee of the check, in the case of a cashier's check or teller's check;
> **3.   The loss of possession was not the result of a transfer by the declarer or a lawful seizure; and**
> **4.   The declarer cannot reasonably obtain possession of the check because the check was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.**

**(d)   "Obligated bank" means the issuer of a cashier's check or teller's check or the acceptor of a certified check.**

(2)(a)   A claimant may assert a claim to the amount of a check by a communication to the obligated bank describing the check with reasonable certainty and requesting payment of the amount of the check if:

1.   The claimant is the drawer or payee of a certified check or the remitter or payee of a cashier's check or teller's check;

2.   The communication contains or is accompanied by a declaration of loss of the claimant with respect to the check;

3.   The communication is received at a time and in a manner affording the bank a reasonable time to act on it before the check is paid; and

4.   The claimant provides reasonable identification if requested by the obligated bank.

Delivery of a declaration of loss is a warranty of the truth of the statements made in the declaration.

(b)   If a claim is asserted in compliance with this subsection, the following rules apply:

1.   The claim becomes enforceable at the later of:

a.   The time the claim is asserted; or

b.   The 90th day following the date of the check, in the case of a cashier's check or teller's check, or the 90th day following the date of the acceptance, in the case of a certified check.

**2.   Until the claim becomes enforceable, it has no legal effect and the obligated bank may pay the check or, in the case of a teller's check, may permit the drawee to pay the check. Payment to a person entitled to enforce the check discharges all liability of the obligated bank with respect to the check.**

3.   If the claim becomes enforceable before the check is presented for payment, the obligated bank is not obliged to pay the check.

**4.   When the claim becomes enforceable, the obligated bank becomes obliged to pay the amount of the check to the claimant if payment of the check has not been made to a person entitled to enforce the check. Subject to s. 674.302(1)(a), payment to the claimant discharges all liability of the obligated bank with respect to the check.**

**(3)   If the obligated bank pays the amount of a check to a claimant under subparagraph (2)(b)4. and the check is presented for payment by a person having rights of a holder in due course, the claimant is obliged to:**

(a)   Refund the payment to the obligated bank if the check is paid; or

(b)   Pay the amount of the check to the person having rights of a holder in due course if the check is dishonored.

(4)   If a claimant has the right to assert a claim under subsection (2) and is also a person entitled to enforce a cashier's check, teller's check, or certified check that is lost, destroyed, or stolen, the claimant may assert rights with respect to the check either under this section or s. 673.3091.

172.   When the claim becomes enforceable, the obligated bank becomes obliged to pay the

amount of the check to the claimant if payment of the check has not been made to a person

entitled to enforce the check.  Subject to s. 674.302(1)(a), payment to the claimant discharges all liability of the obligated bank with respect to the check.

The Plaintiff avers that Florida statute §673.4011 and §673.4031 apply.

> 673.4011Signature.—
> > (1)**A person is not liable on an instrument** unless:
> > (a)**The person signed the instrument; or**
> > (b)The person is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under s. 673.4021.
> > (2)A signature may be made:
> > (a)Manually or by means of a device or machine; and
> > (b)By the use of any name, including a trade or assumed name, or by a word, mark, or symbol executed or adopted by a person with present intention to authenticate a writing.
>
> 673.4031Unauthorized signature.—
> > (1)**Unless otherwise provided in this chapter or chapter 674, an unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value.** An unauthorized signature may be ratified for all purposes of this chapter.
> > (2)If the signature of more than one person is required to constitute the authorized signature of an organization, the signature of the organization is unauthorized if one of the required signatures is lacking.
> > (3)**The civil or criminal liability of a person who makes an unauthorized signature is not affected by any provision of this chapter which makes the unauthorized signature effective for the purposes of this chapter.**

Under **Florida Statutes § 674, the check was not payable because of the unauthorized signature and under Florida Statute § 673** unauthorized signature is ineffective.  Not properly payable and any amounts stolen must be returned to the Plaintiff.

173.    Florida's Uniform Commercial Code (UCC) makes BOA and CHASE absolutely liable to the Plaintiff for unlawful theft and use of the Plaintiff's funds.

174.    Ordinarily, a drawee bank is absolutely liable to its customer for payment of a forged check. Because a forged check is not a "properly payable item," Fla. Stat. § 673.4031 (1993); see also Perini Corp. v. First Nat'l Bank, 553 F.2d 398, 403 (5th Cir.1977), a forged maker's

signature is wholly inoperative as the professed drawer's signature. Perini, 553 F.2d at 403. Any payment on such an instrument is not to the professed drawer's order and violates the drawee bank's strict duty to charge the account of its customer only for properly payable items. Perini, 553 F.2d at 404.

175.     Plaintiff's U.C.C. cause of action is based on Florida Uniform Commercial Code Statute § 674.401 which provides that a bank may only charge against its customer's account an item that is properly payable from the account.

    **WHEREFORE**, the Plaintiff demands the entry of judgment in his favor and against BANK OF AMERICA, N.A. and J.P. MORGAN/CHASE BANK N.A. in an amount of at least $74,601.00 plus interest, costs, fees, incurred and any other relief that the Court may deem just and appropriate.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff demands trial by jury on all of the above counts in this Complaint.

Dated:  November 13, 2014,

        Respectfully Submitted,

        By:  */S/ Marilyn L. Maloy,*
                MARILYN L. MALOY
                Florida Bar No.: 12771
                **MALOY LAW GROUP, LLC**
                Attorney for Plaintiff
                540 NW 165 Street Road, Suite 210
                Miami, FL 33169
                Telephone:  (786) 483-7541
                Facsimile:  (305) 402-0204
                E-Service: service@maloylaw.com